WHITE (JACKSON v.). See Case No. 7,151.

---

## Case No. 17,550.
### WHITE v. JONES.
[6 N. B. R. 175;[1] 29 Leg. Int. 325.]

District Court, D. Kentucky. 1873.

BANKRUPTCY—CONSIGNMENT TO INSOLVENT—RIGHT TO PROCEEDS—EVIDENCE.

A. consigned goods to B. with orders to sell them and take negotiable notes payable to his order. B. sold the goods to C. taking negotiable notes payable to himself instead of to A. At the time of the sale, C. was accommodation endorser for B. to a large amount. B. discounted the notes above mentioned and paid the proceeds to C. to apply towards taking up the notes on which C. was endorser. B. was insolvent at this time, and shortly thereafter was adjudged a bankrupt. His assignee brought suit and recovered the amount thus paid to C. on the ground that he, C., had reasonable cause to believe B. was insolvent when he received the money. A. filed a bill in equity to recover the money in the hands of the assignee, claiming that as it never belonged either to B. or C. he ought to be allowed to assert his right to it. The court held that it was not shown that the money paid to C. by B. was the product of the sale of A.'s goods, that although the bill alleges the whole of it was thus derived, and the allegation is not denied by the answer, the allegation is not on this account to be taken as true, that it is only an allegation of some fact which is presumed to be within the knowledge of the party answering, that can be taken as true, simply because it is not denied. The court further *held* that the fund having been recovered not in virtue of any right in the complainant personally, but in virtue of the rights of the bankrupt's creditors generally and in virtue of the clear legal right of all the creditors, under the bankrupt law, it must be distributed among them generally and not given to one.

Some time prior to February twenty-seventh, eighteen hundred and seventy-one, the complainant, White, consigned to the bankrupts, Schickedantz & Sewell, one hundred and twenty-five barrels of whisky, for sale, directing them to sell and take negotiable notes, payable to his order. Schickedantz & Sewell sold all the whisky, between the twenty-seventh of February, eighteen hundred and seventy-one, and March fourth, following, to Boes & Lucking, taking negotiable notes payable to themselves instead of White. At the time of the sale, Boes & Lucking were accommodation endorsers for Schickedantz & Sewell to the amount of six thousand four hundred dollars. Schickedantz & Sewell caused all the notes which they had received on the sale of whisky to be discounted in bank, and sometime be-

---

[1] [Reprinted from 6 N. B. R. 175, by permission.]

tween the first and fifteenth of March, eighteen hundred and seventy-one, paid to Boes & Lucking six thousand two hundred dollars, with the understanding that Boes & Lucking would appropriate the same to the taking up of the bills on which they were endorsers, as mentioned above. Schickedantz & Sewell, at the time of the payment to Boes & Lucking, were insolvent, contemplated insolvency, and were, on the eleventh of April, eighteen hundred and seventy-one on the petition filed against them by one of their creditors. John D. Harris, adjudged bankrupts. Afterward S. E. Jones, the defendant, as assignee of the estate of Schickedantz & Sewell, brought suit against Boes & Lucking, under the provisions of the thirty-fifth section of the bankrupt act, and recovered from them the six thousand two hundred dollars, on the ground that the payment had been made by Schickedantz & Sewell, at a time when they were insolvent, and that Boes & Lucking, who were their creditors, had reasonable cause to believe them to be insolvent, and that the payment made by them was a preference, and a fraud upon the bankrupt act. In this suit it did not appear that the six thousand two hundred dollars, which had been paid to Boes & Lucking, was the same money that was derived from the discount of the notes given by them on account of White's whisky, but it did appear that the money was for the most part withdrawn from the bank by Schickedantz & Sewell, and mingled with their other moneys. The bill, however, alleges that the money paid to Boes & Lucking was the proceeds of the sale of White's whisky, and this is not denied by the answer of the assignee. The complainant, White, seeks to recover the money in the hands of the assignee which was recovered from Boes & Lucking, claiming that, as it never belonged to Schickedantz & Sewell, or to Boes & Lucking, he ought to be allowed now to assert his right to it, the same as if it had been found by the assignee in the hands of Schickedantz & Sewell in trust for complainant. That the fraudulent transfer to Boes & Lucking did not confer any rights upon the assignee in regard to the fund, other than what he would have had if such transfer had not been made.

BALLARD, District Judge. I have reluctantly come to the conclusion that complainant has not made out a case which entitles him to any relief. It is not shown, that six thousand two hundred dollars, paid by Schickedantz & Sewell to Boes & Lucking, were the product of complainant's whisky. I may conjecture that a part, nay, that a large part of this sum was derived, but the fact is not satisfactorily proven. The bill, it is true, alleges that the whole of it was thus derived, and the allegation is not denied by the answer, but the allegation is not on this account to be taken as true.

The rule in chancery pleadings is not that every allegation of a bill be taken as true, simply because it is not denied in the answer. If any allegation is to be taken as true, simply because it is not denied, it is only an allegation of some fact which is presumed to be within the knowledge of the party answering. Now there is no ground for presuming that Jones knew that the money which Schickedantz & Sewell paid Boes & Lucking was derived from complainant's whisky; and, therefore, if I have stated the rule of equity pleading correctly, the allegation of complainant's bill, that it was so derived, though not denied by Jones, is not to be taken as true. But assuming the fact to be as alleged, still it is undeniable that complainant could not recover the money from Boes & Lucking without showing that they knew it. The moment the money was paid to them, under circumstances which were entirely lawful, but for the provisions of the bankruptcy statute, it was free from all trust and claim in behalf of the complainant. There is no allegation in the bill that Boes & Lucking knew whence the money paid them was derived, and, therefore, it must be assumed they were ignorant of the fact. Now, I think if complainant could not have followed the money into the hands of Boes & Lucking; if his lien on the trust in it was destroyed when it was received by Boes & Lucking, then he cannot follow it into the hands of the assignee in bankruptcy who recovered it of Boes & Lucking, not on the ground that they received it knowing the complainant's right or claim, but on the sole ground that they received it contrary to the provisions of the bankruptcy statute.

It cannot be maintained that the assignee holds the money subject to the same trust and equities which attached to it when it was in the hands of the bankrupts. If he had received it from them, or had received it as their right, then he would have no better right to it than they, and if in his hands, it would be subject to every equity to which it was subject in their hands. But he did not receive it from them or recover it on the ground of any right in them. They had effectually parted with their right. The assignee recovered it in spite of their effort to part with it, and not as their representative, or as the representative of complainant, but as the representative of the bankrupts' creditors. He recovered not because the bankrupts had defrauded complainant, but because they had committed what is made by the thirty-fifth section of the bankrupt act a fraud on their creditors generally. As I view the case, the fund having been recovered, not in virtue of any right in complainant personally, but in virtue of the rights of the bankrupts' creditors generally; not in virtue of any peculiar equity in any particular creditor, but in virtue of the clear legal right of all the creditors under the bankrupt

law, it must be distributed among the creditors generally, and not given to one. Let the bill be dismissed with costs.